**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JOSHUA WAGNER,** <br> **on behalf of himself and all others similarly situated,** <br> c/o Finney Law Firm, LLC <br> 4270 Ivy Pointe Blvd., Ste. 225 <br> Cincinnati, Ohio 45245 <br><br> **Plaintiff,** <br><br> **v.** <br><br> **LOOKING GLASS HOSPITALITY GROUP, LLC,** <br> c/o Taft Service Solutions Corp., <br> Statutory Agent <br> 301 East Fourth Street, Suite 2800 <br> Cincinnati, Ohio 45202 <br><br> **LGHG PUBLIC HOUSE, LLC,** <br> c/o Taft Service Solutions Corp., <br> Statutory Agent <br> 301 East Fourth Street, Suite 2800 <br> Cincinnati, Ohio 45202 <br><br> **TAHONA KITCHEN, LLC,** <br> c/o Taft Service Solutions Corp., <br> Statutory Agent <br> 301 East Fourth Street, Suite 2800 <br> Cincinnati, Ohio 45202 <br><br> **THE STATION ON MAIN, LLC,** <br> c/o Taft Service Solutions Corp., <br> Statutory Agent <br> 301 East Fourth Street, Suite 2800 <br> Cincinnati, Ohio 45202 <br><br> **SCOTT SCHMIDT,** <br> 5939 Maxfli Ln. <br> Mason, Ohio 45040 <br><br> **ERIN SCHMIDT,** <br> 5939 Maxfli Ln. | : | **Case No.** <br><br> **JUDGE** <br><br> **PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT** |

Mason, Ohio 45040 :
:
and :
:
**WILLIAM WADSWORTH,** :
4628 Angeline Ln. :
Mason, Ohio 45040 :
:
**Defendants.** :

COMES NOW Plaintiff Joshua Wagner ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned legal counsel, and for his Collective and Class Action Complaint against Defendants Looking Glass Hospitality Group, LLC ("Looking Glass"), LGHG Public House, LLC ("LGHG Public House"), Tahona Kitchen, LLC ("Tahona Kitchen"), The Station on Main, LLC ("Station on Main"), Scott Schmidt, Erin Schmidt, and William Wadsworth (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1. This is a collective and class action to recover unpaid minimum wages owed to workers, including servers, who worked for Defendants during calendar year 2026. Defendants paid their servers a sub-minimum, tip-credit cash wage. Then, on November 17, 2026, Defendants abruptly closed the Restaurants without paying their servers and other workers any wages at all for the work they performed from October 26, 2026 through November 16, 2026.

2. Plaintiff brings Count I as a collective action under Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b), on behalf of himself and all similarly situated workers who file written consents to join, including a sub-collective of servers who were paid a tip-credit cash wage.

3. Plaintiff brings Count II as a class action under Fed. R. Civ. P. 23 for violations of Article II, Section 34a of the Ohio Constitution ("Section 34a"), on behalf of himself and all similarly situated workers who worked for Defendants in Ohio, including a sub-class of servers who were paid a tip-credit cash wage.

**JURISDICTION AND VENUE**

4. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).
5. This Court has supplemental jurisdiction over Plaintiff's Ohio-law claim under 28 U.S.C. § 1367 because it is so related to the FLSA claim that it forms part of the same case or controversy.
6. Venue in this Court is proper under 28 U.S.C. § 139 because Defendants reside and conduct business in this District, and a substantial part of the events or omissions giving rise to the claims occurred herein. Looking Glass maintains its principal place of business in Mason, Warren County, Ohio, and operates the four restaurants identified in Paragraph 10, located in Butler, Hamilton, and Warren Counties, where Plaintiff and the other servers performed the work at issue.

**PARTIES**

7. Plaintiff Joshua Wagner is a resident of Ohio and of this judicial district. Plaintiff was employed by Defendants as a server at Fretboard Brewing and Public House ("Fretboard") from October 8, 2026, to November 17, 2026.
8. At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e) and Section 34a.

9. Plaintiff's written consent to join this action under 29 U.S.C. § 216(b) is attached as Exhibit A.

10. Defendant Looking Glass Hospitality Group, LLC is an Ohio limited liability company with its principal place of business at 5155 Financial Way, Ste. 2, Mason, Ohio. Looking Glass, directly or through its subsidiaries, owns and operates four restaurants in this judicial district (collectively, the "Restaurants"):

    a. Fretboard, 103 Main St., Hamilton, Ohio, which is owned and operated by Defendant LGHG Public House, LLC d/b/a Fretboard Brewing and Public House;

    b. Emery American Restaurant, 6914 Wooster Pike, Mariemont, Ohio, which, upon information and belief, is owned and operated by Looking Glass or a subsidiary of Looking Glass d/b/a Emery American Restaurant;

    c. Tahona Taqueria & Tequila Bar ("Tahona"), 1100 Summit Pl., Blue Ash, Ohio, which is owned and operated by Defendant Tahona Kitchen, LLC d/b/a Tahona Taqueria & Tequila Bar; and

    d. S.W. Clyborne Provisions and Spirits ("S.W. Clyborne"), 5948 Snider Rd., Mason, Ohio, which is owned and operated by Defendant The Station on Main, LLC d/b/a S.W. Clyborne Provisions and Spirits.

11. Defendant LGHG Public House is an Ohio limited liability company and a subsidiary of LGHG.

12. Defendant Tahona Kitchen is an Ohio limited liability company and a subsidiary of Looking Glass.

13. Defendant Station on Main is an Ohio limited liability company and a wholly owned subsidiary of Looking Glass.

14. LGHG Public House, Tahona Kitchen, and Station on Main are referred to collectively as the "Subsidiary Defendants." Looking Glass and the Subsidiary Defendants are referred to collectively as the "Entity Defendants."

15. Upon information and belief, Looking Glass operates and controls the Restaurants, including those owned by the Subsidiary Defendants, as a single, integrated enterprise, and Looking Glass, directly and through the Subsidiary Defendants, established and administered the compensation, timekeeping, and tip-credit policies applied to Plaintiff and the other servers at each of the Restaurants. Each Entity Defendant is therefore an "employer" of Plaintiff, the FLSA Collective, and the Ohio Class within the meaning of 29 U.S.C. § 203(d) and Section 34a.

16. Defendant Scott Schmidt is an individual who resides at 5939 Maxfli Ln., Mason, Ohio 45040. Scott Schmidt is an owner of Looking Glass.

17. Defendant Erin Schmidt is an individual who resides at 5939 Maxfli Ln., Mason, Ohio 45040. Erin Schmidt is an owner of Looking Glass.

18. Defendant William Wadsworth is an individual who resides at 4628 Angeline Ln., Mason, Ohio 45040. William Wadsworth is the Operations Partner in Looking Glass.

19. Upon information and belief, Scott Schmidt, Erin Schmidt, and William Wadsworth (the "Individual Defendants") share operational control over Looking Glass and each of the Subsidiary Defendants, and over each of the Restaurants. Among other things, the Individual Defendants jointly exercise authority to hire and fire employees, supervise and control work schedules and conditions of employment, determine the rate and method of employee pay, including the use of the tip credit, and maintain or direct the maintenance of employment and payroll records.

20. Each Individual Defendant acted directly or indirectly in the interest of each Entity Defendant in relation to its employees and is therefore an "employer" of Plaintiff, the FLSA Collective, and the Ohio Class within the meaning of 29 U.S.C. § 203(d) and Section 34a.
21. Each Individual Defendant is jointly and severally liable with the Entity Defendants for the violations alleged herein.
22. At all relevant times, Defendants were joint employers of Plaintiff and the other servers.
23. At all relevant times, the Entity Defendants, which perform related activities through unified operation and common control for a common business purpose, constituted a single "enterprise" within the meaning of 29 U.S.C. § 203(r), and that enterprise was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1), in that it had employees handling, selling, or otherwise working on goods or materials (including food, beverages, and supplies) that were moved in or produced for interstate commerce, and had annual gross volume of sales made or business done of not less than $500,000.
24. At all relevant times, Defendants were "employers" within the meaning of Section 34a, which incorporates the definitions of "employer" and "employee" from the FLSA. Ohio Const. Art. II, § 34a.

## FACTUAL ALLEGATIONS

### Defendants' Use of the Tip Credit

25. Plaintiff and the other servers worked at Defendants' Restaurants, where their job duties included taking customer orders, serving food and beverages, and related tasks.

26. Defendants paid Plaintiff and the other servers an hourly cash wage below the full federal and Ohio minimum wage, purporting to take a "tip credit" for the remainder under 29 U.S.C. § 203(m)(2) and Section 34a.

27. Defendants paid Plaintiff and the other servers a cash wage of $5.50 per hour, claiming a tip credit of $5.50 per hour toward the $11.00 Ohio minimum wage.

28. Under the FLSA, an employer may count a portion of a tipped employee's tips toward its minimum-wage obligation only if, among other things, the employer pays the employee a cash wage of at least $2.13 per hour for all hours worked and the cash wage plus tips equals at least the full minimum wage of $7.25 per hour. 29 U.S.C. §§ 203(m)(2)(A), 206(a)(1)(C).

29. Section 34a sets a higher minimum wage, adjusted annually for inflation, and permits employers of tipped employees to pay a cash wage of not less than one-half of the Ohio minimum wage. Ohio Const. Art. II, § 34a. In 2026, the Ohio minimum wage is $11.00 per hour, and the minimum cash wage an employer may pay a tipped employee is therefore $5.50 per hour.

**<u>Defendants' Failure to Pay for All Hours Worked</u>**

30. Defendants did not pay Plaintiff and the other servers, or other workers, any wages for work they performed for Defendants' benefit.

31. On November 17, 2026, Defendants announced the immediate closure of the Restaurants.

32. At the time of the closure, Defendants had not paid Plaintiff and the other servers any wages for the work they performed from October 26, 2026 through November 16, 2026 (the "Unpaid Period"). To date, Defendants have not paid Plaintiff and the other servers any wages for the work they performed during the Unpaid Period.

33. Upon information and belief, Defendants have not paid other non-tip credit workers any wages for the work they performed during the Unpaid Period.

34. Defendants knew that Plaintiff and the other servers performed this work, because it was performed at the Restaurants, during scheduled shifts, at Defendants' direction, and was recorded or capable of being recorded in Defendants' timekeeping and point-of-sale systems.

35. For each hour of uncompensated work, Plaintiff and the other servers received $0.00 in wages from Defendants, which is less than the minimum wage required by 29 U.S.C. § 206 and Section 34a.

36. Because Defendants did not pay Plaintiff and the other servers the required tip-credit cash wage for all hours worked, Defendants were not entitled to claim a tip credit for those hours, and Defendants owe Plaintiff and the other servers the full minimum wage for every uncompensated hour.

37. During the Unpaid Period, Plaintiff worked approximately 38 hours per week as a server at Fretboard, for which Defendants paid him nothing.

38. Defendants' failure to pay for all hours worked resulted from common policies and practices applied uniformly to all servers at the Restaurants.

39. Defendants' violations were knowing, willful, and in reckless disregard of the law. Defendants knew of their obligation to pay the minimum wage for all hours worked, as evidenced by their use of the tip credit, yet deliberately failed to pay servers for work they performed.

## COLLECTIVE ACTION ALLEGATIONS

40. Plaintiff brings Count I on behalf of himself and the following similarly situated persons (the "FLSA Collective"):

    **All current and former employees of Defendants who performed work during the Unpaid Period and were not paid at least the minimum wage for all hours worked during the Unpaid Period.**

41. Plaintiff also brings Count I on behalf of himself and the following sub-collective of the FLSA Collective (the "Tip Credit Sub-Collective"):

    **All current and former servers employed by Defendants at any time from January 1, 2026 through December 31, 2026, who were paid a tip-credit cash wage and who performed work for which they were not paid.**

42. Plaintiff and the members of the FLSA Collective are "similarly situated" within the meaning of 29 U.S.C. § 216(b). They were employed by the same Defendants at the same Restaurants, were subject to the same policy and practice of failing to pay any wages for work performed during the Unpaid Period, and were injured in the same manner by Defendants' failure to pay the minimum wage.

43. Plaintiff and the members of the Tip Credit Sub-Collective are further similarly situated because they held the same job, were paid under the same tip-credit compensation scheme, and were subject to Defendants' unlawful claim of a tip credit for hours for which Defendants paid no cash wage.

44. Defendants' records, including payroll and timekeeping records, will reveal the identities and contact information of the members of the FLSA Collective and the Tip Credit Sub-Collective. Upon information and belief, the FLSA Collective consists of more than 40 persons.

45. Plaintiff will request that the Court authorize notice to the members of the FLSA Collective and the Tip Credit Sub-Collective informing them of the pendency of this action and their right to opt in by filing written consents.

## CLASS ACTION ALLEGATIONS

46. Plaintiff brings Count II under Fed. R. Civ. P. 23, and as authorized by Section 34a, on behalf of himself and the following class (the "Ohio Class"):

> **All current and former employees of Defendants in Ohio who performed work during the Unpaid Period and were not paid at least the Ohio minimum wage for all hours worked during the Unpaid Period.**

47. Plaintiff also brings Count II on behalf of himself and the following sub-class of the Ohio Class (the "Tip Credit Sub-Class"):

> **All current and former servers employed by Defendants in Ohio at any time from January 1, 2026 through December 31, 2026, who were paid a tip-credit cash wage and who performed work for which they were not paid.**

48. Numerosity. The Ohio Class and the Tip Credit Sub-Class are each so numerous that joinder of all members is impracticable. Upon information and belief, the Ohio Class includes more than 40 persons, and the Tip Credit Sub-Class includes more than 40 persons, whose identities are readily ascertainable from Defendants' records.

49. Commonality. There are questions of law and fact common to the Ohio Class and the Tip Credit Sub-Class, including: (a) whether Defendants failed to pay any wages for work performed during the Unpaid Period; (b) whether Defendants paid Class members less than the Ohio minimum wage for all hours worked; (c) as to the Tip Credit Sub-Class, whether Defendants were entitled to take a tip credit for hours for which they paid no cash wage; (d) whether the Individual Defendants are employers under Section 34a; (e) whether Defendants maintained accurate records of hours worked; and (f) the proper measure of

damages, including the additional damages of two times the back wages available under Section 34a.

50. Typicality. Plaintiff's claims are typical of those of the Ohio Class and the Tip Credit Sub-Class. Plaintiff, a server paid a tip-credit cash wage who received no wages for the Unpaid Period, is a member of both. He and the other members were subject to the same unlawful policies, and their claims arise from the same practices and legal theories.

51. Adequacy. Plaintiff will fairly and adequately protect the interests of the Ohio Class and the Tip Credit Sub-Class. Plaintiff has no interests antagonistic to the Ohio Class and has retained counsel experienced in wage-and-hour collective and class litigation.

52. Predominance and Superiority. The common questions predominate over any questions affecting only individual members because Defendants' liability turns on uniform policies. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because the individual claims are relatively small, Class members may fear retaliation, and class treatment will avoid inconsistent judgments and conserve judicial resources.

53. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the Ohio Class would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants. Defendants applied the same compensation, timekeeping, and tip-credit policies to every worker at every Restaurant, and separate actions could result in conflicting determinations as to, among other things, whether each Defendant is an employer under Section 34a, whether Defendants were

entitled to claim a tip credit for hours for which they paid no cash wage, and whether Defendants' failure to pay wages for the Unpaid Period violated Section 34a.

54. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual members of the Ohio Class would, as a practical matter, be dispositive of the interests of the other Class members not parties to those adjudications, or would substantially impair or impede their ability to protect their interests. Upon information and belief, Defendants abruptly closed all of the Restaurants on November 17, 2026, have ceased operations, and possess limited assets from which the Class's unpaid wages and statutory damages can be satisfied. Absent class treatment, early individual judgments could deplete those limited assets and leave later-filing Class members without any meaningful recovery.

## COUNT I

**Failure to Pay Minimum Wage — Fair Labor Standards Act, 29 U.S.C. §§ 206, 216(b)**
**(On Behalf of Plaintiff, the FLSA Collective, and the Tip Credit Sub-Collective Against All Defendants)**

55. Plaintiff incorporates the foregoing allegations as if fully restated herein.

56. The FLSA requires covered employers to pay non-exempt employees at least $7.25 per hour for every hour worked. 29 U.S.C. § 206(a)(1)(C).

57. Plaintiff and the FLSA Collective were non-exempt employees entitled to the minimum wage.

58. Defendants violated 29 U.S.C. § 206 by failing to pay Plaintiff and the FLSA Collective any wages for hours they worked during the Unpaid Period, and, as to the Tip Credit Sub-Collective, by claiming a tip credit to which they were not entitled.

59. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a).

60. Defendants did not act in good faith or with reasonable grounds for believing their conduct complied with the FLSA. 29 U.S.C. § 260.

61. As a result, Plaintiff and the FLSA Collective are entitled to unpaid minimum wages, an equal amount as liquidated damages, and reasonable attorneys' fees and costs. 29 U.S.C. § 216(b).

## COUNT II

### Failure to Pay Minimum Wage — Ohio Const. Art. II, § 34a (On Behalf of Plaintiff, the Ohio Class, and the Tip Credit Sub-Class Against All Defendants)

62. Plaintiff incorporates the foregoing allegations as if fully restated herein.

63. Section 34a provides that "every employer shall pay their employees a wage rate of not less than" the Ohio minimum wage, adjusted annually, and permits an employer of tipped employees to pay a cash wage of not less than one-half of that rate only where tips make up the difference. Ohio Const. Art. II, § 34a.

64. Plaintiff and the Ohio Class were employees entitled to the Ohio minimum wage, and Defendants were their employers under Section 34a.

65. Defendants violated Section 34a by failing to pay Plaintiff and the Ohio Class any wages for hours they worked during the Unpaid Period, and therefore less than the Ohio minimum wage, and, as to the Tip Credit Sub-Class, by claiming a tip credit to which they were not entitled.

66. Section 34a authorizes an action "by an employee, person acting on behalf of an employee or all similarly situated employees," within three years of the violation or of when the violation ceased if it was of a continuing nature. Ohio Const. Art. II, § 34a.

67. Under Section 34a, Plaintiff and the Ohio Class are entitled to equitable and monetary relief, including back wages, an additional amount equal to twice the back wages, and costs and reasonable attorneys' fees. Ohio Const. Art. II, § 34a.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that the Court:

1. Authorize prompt notice under 29 U.S.C. § 216(b) to all members of the FLSA Collective and the Tip Credit Sub-Collective, and direct Defendants to produce their names and contact information;
2. Certify the Ohio Class and the Tip Credit Sub-Class under Fed. R. Civ. P. 23(a), (b)(1), and (b)(3), appoint Plaintiff as Class Representative, and appoint his counsel as Class Counsel;
3. Declare that Defendants' practices violate the FLSA and Section 34a;
4. Award Plaintiff and the FLSA Collective unpaid minimum wages and an equal amount as liquidated damages under 29 U.S.C. § 216(b);
5. Award Plaintiff and the Ohio Class back wages and an additional amount equal to twice the back wages under Section 34a;
6. Enjoin Defendants from continuing the unlawful practices described herein;
7. Award pre-judgment and post-judgment interest;
8. Award reasonable attorneys' fees and costs; and
9. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Matthew S. Okiishi*__________
Matthew S. Okiishi (0096706)
Finney Law Firm, LLC
4270 Ivy Pointe Blvd., Ste. 225
Cincinnati, Ohio 45245
Phone: (513) 943-6659
Fax: (513) 943-6669
Matt@finneylawfirm.com
*Counsel for Plaintiff and the Putative Collective and Class*